UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:23-cr-00490-SRC |
| | ) | |
| SANEL SMAJLOVIC, | ) | |
| | ) | |
| Defendant. | ) | |

## Memorandum and Order

A grand jury indicted Sanel Smajlovic for attempted production of child pornography. He moves to suppress all evidence that Homeland Security Investigations (HSI) obtained through administrative summons and search warrants. For the reasons explained below, the Court denies Smajlovic's motion and adopts in part the Magistrate Judge's Report and Recommendation.

### I.   Procedural history

A federal grand jury indicted Sanel Smajlovic on four counts of violating 18 U.S.C. § 2251(a) and (e). Docs. 1–2. The Court referred this case to United States Magistrate Judge Rodney H. Holmes, pursuant to 28 U.S.C. § 636(b). *See id.* In July 2025, Smajlovic filed a motion to suppress various records and evidence obtained by HSI. Doc. 65. Judge Holmes held an evidentiary hearing in September 2025, docs. 77, 80, and in November, issued a Report and Recommendation (R&R), recommending that the Court deny Smajlovic's motion, doc. 82 at 15. (The Court cites to page numbers as assigned by CM/ECF.). After receiving an extension of time, docs. 83–85, Smajlovic filed his objections to the R&R, doc. 88. The United States responded to Smajlovic's objections out of time, docs. 89–91, and Smajlovic filed a timely reply, doc. 92.

## II.    Standard

When a party objects to a magistrate judge's R&R, the district judge must conduct a de novo review of the portions of the report, findings, or recommendations to which the party objects.  *See* 28 U.S.C. § 636(b)(1)(C); *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003) (citing 28 U.S.C. § 636(b)(1)); *Thompson v. Nix*, 897 F.2d 356, 357 (8th Cir. 1990).  In making its de novo determination, the Court reviewed the entire record related to Smajlovic's motions.

## III.    Statement of facts

HSI is a branch of Immigration and Customs Enforcement, housed within the Department of Homeland Security.  *See* doc. 82 at 2 n.1; docs. 76-1 at 14, 76-2 at 12, 76-3 at 11, 76-4 at 9. This case arises from an HSI investigation.  The Court adopts the following facts regarding this investigation from the R&R, with supporting citations.

An HSI Portland investigation revealed that an individual in the Philippines ("Trafficker") provided customers around the world with visual depictions of minors engaging in sexually explicit conduct, through the Trafficker's Skype account and in exchange for compensation.  Docs. 76-1 at 31, 76-2 at 19, 76-3 at 17, 76-4 at 19–20.  On March 25, 2022, the United States District Court for the District of Maine issued a federal search warrant for records pertaining to the Trafficker.  Docs. 76-1 at 31, 76-2 at 19–20, 76-3 at 17, 76-4 at 20.  The records disclosed chat conversations between Trafficker and a Skype account user named "xflinkx," in which "xflinkx" was paying for live broadcasts and directing the sexual acts being performed on minor females in the Philippines.  Docs. 76-1 at 33, 76-2 at 19–21, 76-3 at 19, 76-4 at 21–22.

HSI then issued summonses to various electronic service providers and money service businesses seeking information associated with "xflinkx" and the account's corresponding email

address, otaku_sanel@sbcglobal.net.  *See* doc. 76-5; *see also* docs. 76-1 at 31, 76-3 at 17–18, 76-4 at 20.  On April 12, 2023, HSI Special Agent Zotos applied for and was granted a search warrant for the records pertaining to the "xflinkx" Skype account.  Doc. 76-2 at 1; *see also* docs. 76-1 at 33, 76-3 at 19, 76-4 at 21–22.

While the R&R does not specifically detail the following information, the record shows that—based on information obtained from the summonses and the April 12, 2023 warrant— Agent Zotos applied for search warrants from Google and Yahoo on September 22, 2023.  *See* docs. 76-1, 76-3; *see also* doc. 65 at 5.  Then on September 24, 2023, HSI executed a search warrant at Smajlovic's residence.  *See* doc. 76-4 at 1–2; *see also* docs. 65 at 5, 69 at 8–9.

## IV.    Discussion

In Smajlovic's Motion to Suppress, he argues that HSI's summonses and search warrants were illegal, and that the Court should therefore suppress the evidence HSI obtained pursuant to them.  *See* doc. 65 at 6–27.  In Judge Holmes's R&R, he found that both HSI's summonses and its search warrants were valid.  *See* doc. 82 at 5–15.  Smajlovic objects to the R&R on six grounds:  (i) Judge Holmes "found facts which were not established as part of the evidentiary record," (ii) HSI did not "ha[ve] the authority to issue summonses pursuant to 19 U.S.C. § 1509," (iii) Smajlovic has a "Fourth Amendment interest in the information summoned by HSI," (iv) the search warrants HSI obtained "were . . . tainted and . . . the exclusionary rule [should] apply," (v) Judge Holmes "did not address [Smajlovic's] alleged [Fifth Amendment] Due Process violation," and (vi) "the search warrants executed in this case were [not] supported by probable cause and were . . . stale."  Doc. 88 at 2.

Smajlovic has two objections to Judge Holmes's factual findings.  *Id.* at 5–8, 18. Smajlovic's second, third, and fifth objections relate to HSI's summonses, while his fourth and

3

sixth objections regard HSI's search warrants. *See* doc. 88 at 2, 16–17. The Court addresses Smajlovic's legal objections to the summons and search warrants first and takes up his factual objections after, because the resolution of his legal objections does not depend on his factual objections.

### A.     The legality of HSI's summonses

#### 1.     HSI's summons authority under 19 U.S.C. § 1509

Judge Holmes found that when HSI issued summonses, it acted pursuant to its legal authority under 19 U.S.C. § 1509. Doc. 82 at 5–8. Section 1509(a) authorizes summons:

> In any investigation . . . conducted for . . . ascertaining the correctness of any entry, for determining the liability of any person for duty, fees and taxes due or duties, fees and taxes which may be due the United States, for determining liability for fines and penalties, or for [e]nsuring compliance with the laws of the United States administered by the United States Customs Service.

19 U.S.C. § 1509(a). Whether this statute applies to HSI's investigation of Smajlovic turns on whether the investigation was for "[e]nsuring compliance with the laws of the United States administered by the United States Customs Service." *Id.*

Smajlovic objects that "[c]hild pornography laws are not administered by the Customs Service or successor agencies." Doc. 88 at 8–11. He cites dictionary definitions of the term "administer" to argue that HSI merely "investigate[s]" child pornography, or "assist[s]" and "cooperat[es]" with its legal enforcement; he claims the agency "does not 'administer' this area of law." *Id.* at 10; *see also* doc. 92 at 1–2. He argues that the Court should limit the scope of the phrase, "for [e]nsuring compliance with the laws of the United States administered by the United States Customs Service," in light of the preceding phrases involving the correctness of an entry,

the assessments of taxes, fees, and duties, or liability for fines and penalties, 19 U.S.C. § 1509(a). Doc. 88 at 10–11.

The Court need not determine the full scope of the laws falling within subsection (a)'s reference to "the laws of the United States." 19 U.S.C. § 1509(a). As discussed below, the Court finds that the child-exploitation laws for which the grand jury indicted Smajlovic are among "the laws of the United States administered by the United States Customs Service." 19 U.S.C. § 1509(a).

"[I]t is well established that a court can, and should, interpret the text of one statute in the light of [the] text of surrounding statutes, even those subsequently enacted." *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 786 n.17 (2000). This is because "[a]t the time a statute is enacted, it may have a range of plausible meanings. Over time, however, subsequent acts can shape or focus those meanings." *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 143 (2000). The "classic judicial task" is, therefore, in "reconciling many laws enacted over time, and getting them to 'make sense' in combination." *United States v. Fausto*, 484 U.S. 439, 453 (1988). This task "necessarily assumes that the implications of a statute may be altered by the implications of a later statute." *Id.*

When Congress enacted the Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2178 (codified at 6 U.S.C. § 203), it "abolished the Customs Service and transferred its functions to the Department of Homeland Security and leadership authority to the Secretary of the Department of Homeland Security." *United States v. Wilson*, 699 F.3d 235, 239 n.2 (2d Cir. 2012) (citing 6 U.S.C. § 203). And in the Human Exploitation Rescue Operations Act of 2015, Pub. L. No. 114-22, 129 Stat. 251 (codified at 6 U.S.C. § 473), Congress required the Secretary of Homeland Security to create within HSI a "Cyber Crimes Center," with a "Child Exploitation

5

Investigations Unit" within it. *See* 6 U.S.C. § 473(a)–(b); *see also United States v. Cates*, 897 F.3d 349, 353 n.2 (1st Cir. 2018) (noting that Homeland Security's "involvement" in child exploitation cases "stem[s] from its obligation[s] to 'provide training, technical expertise, support, or coordination of child exploitation investigations, as needed, to cooperating law enforcement agencies and personnel'" (citing 6 U.S.C. § 473(b)(2)(C))).

Because Congress transferred the Customs Service's responsibilities to Homeland Security, 6 U.S.C. § 203, and Homeland Security administers laws against child exploitation, 6 U.S.C. § 473(a)–(b), the Court finds that child-exploitation investigations relating to 18 U.S.C. § 2251 (as occurred here) are "investigation[s] . . . for [e]nsuring compliance with the laws of the United States administered by the United States Customs Service," 19 U.S.C. § 1509(a). The Court thus overrules Smajlovic's objection and finds that HSI's investigation comes within the scope of section 1509. Doc. 88 at 8–11.

The Court next addresses whether HSI complied with section 1509 when issuing administrative summonses in this case. Both parties agree that HSI issued its summonses under section 1509(a)(2). *See* doc. 88 at 12; doc. 91 at 5; *see also* doc. 82 at 8. Section 1509(a)(2) enables HSI to have the individuals it summons "produce records, as defined in subsection (d)(1)(A)." 19 U.S.C. § 1509(a)(2). Subsection (d)(1)(A) says that "records includes those (i) required to be kept under section 1508 of this title; or (ii) regarding which there is probable cause to believe that they pertain to merchandise the importation of which into the United States is prohibited." 19 U.S.C. § 1509(d)(1)(A). Judge Holmes found that the power to summon records pertaining to prohibited merchandise authorized HSI's summonses of Smajlovic's records. Doc. 82 at 8 (citing 19 U.S.C. § 1509(d)(1)(A)(ii)). Smajlovic objects that "the records

summoned in this case . . . did not pertain to the importation of prohibited merchandise." Doc. 88 at 13.

But Smajlovic does not meaningfully distinguish the numerous cases that have found that HSI can issue summonses under section 1509 in child-pornography investigations. *See United States v. Meyrand*, No. 4:23-cr-00287-HEA, 2025 WL 1282638, at *1 (E.D. Mo. May 2, 2025); *United States v. Merrell*, 88 F. Supp. 3d 1017, 1033 (D. Minn. 2015), *aff'd on other grounds*, 842 F.3d 577 (8th Cir. 2016); *United States v. Cray*, 673 F. Supp. 2d 1368, 1376–77 (S.D. Ga. 2009); *United States v. McLean*, No. SA-09-cr-270, 2010 WL 376381, at *3 (W.D. Tex. Jan. 25, 2010), *aff'd on other grounds*, 419 F. App'x 473 (5th Cir. 2011); *United States v. Barnes*, No. cr18-5141-BHS, 2019 WL 2515317, at *6 (W.D. Wash. June 18, 2019), *aff'd*, No. 20-30059, 2021 WL 4938126 (9th Cir. Oct. 22, 2021); *United States v. Wellbeloved-Stone*, No. 3:17-cr-00014, 2018 WL 1973286, at *4–5 (W.D. Va. Apr. 26, 2018), *aff'd*, 777 F. App'x 605 (4th Cir. 2019). Smajlovic has not cited a single case establishing the contrary, *see* doc. 88 at 8–13, instead only detailing some of the cases above that undermine his argument, *id.* at 9 n.1.

And even assuming that Smajlovic is right that the records HSI obtained do not relate to prohibited merchandise, it does not appear that—in using the word "includes"—Congress intended to exhaustively define the term "records." *See U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 390 (2018) (noting that the use of the word "includes" suggest a "non-exhaustive" list); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994) (noting that a statute's use of "including" indicates an "illustrative and not limitative function" (cleaned up)); *see also Include, Black's Law Dictionary* (12th ed. 2024) ("The participle *including* typically indicates a partial list." (emphasis in original)). So even if

Smajlovic's records do not pertain to the importation of prohibited merchandise, *see* 19 U.S.C. § 1509(d)(1)(A)(ii), that does not establish that the records fall outside of the statute's scope.

Finally, even if Smajlovic were correct that HSI issued its summonses in violation of section 1509—and he is not—the Court would still not suppress Smajlovic's records.  Courts "appl[y] the exclusionary rule primarily to deter constitutional violations," and "few cases [exist] in which [courts] have suppressed evidence for statutory violations." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 348 (2006).  The Supreme Court clarified that suppression of evidence is only for "statutory violations that implicate[] important Fourth and Fifth Amendment interests." *Id.*  "In the statutory context, suppression is a creature of the statute, and its availability depends on the statutory text." *United States v. Wellbeloved-Stone*, 777 F. App'x 605, 607 (4th Cir. 2019) (quoting *United States v. Clenney*, 631 F.3d 658, 667 (4th Cir. 2011)); *United States v. Fregoso*, 60 F.3d 1314, 1320–21 (8th Cir. 1995) (examining a statutory scheme to determine whether it provides for suppression of evidence as a remedy); *United States v. Barnes*, 47 F.3d 963, 965 (8th Cir. 1995) (same); *see also United States v. Thompson*, 936 F.2d 1249, 1251 (11th Cir. 1991) (collecting circuit cases).  And "Congress did not provide a statutory suppression remedy for information obtained in violation of [section] 1509." *Wellbeloved-Stone*, 777 F. App'x at 607; *see also United States v. Barnes*, No. 20-30059, 2021 WL 4938126, at *2 (9th Cir. Oct. 22, 2021) (finding that, under "19 U.S.C. § 1509 . . . , even assuming a statutory violation occurred, suppression would not be . . . the appropriate remedy").

In summary, section 1509 authorizes HSI's summonses in this case, and even if it did not, the Court would not suppress Smajlovic's records obtained through those summonses.  The Court therefore overrules Smajlovic's objections regarding section 1509.  Doc. 88 at 8–13.

8

## 2.   Smajlovic's Fourth Amendment interest in his IP logs

In his Motion to Suppress, Smajlovic asserts that HSI obtained "various email addresses, account, IP, [and] subscriber information, and mailing address" information.  Doc. 65 at 4.  Judge Holmes concluded in his R&R that "Smajlovic did not have a reasonable expectation of privacy in his subscriber, IP address, and account information."  Doc. 82 at 12.  In his objections to the R&R, Smajlovic objects only to Judge Holmes's analysis of his Fourth Amendment interest in IP logs.  Doc. 88 at 13.  Therefore, the Court addresses only whether Smajlovic had a constitutionally protected interest in the IP logs that HSI summoned.  *See* 28 U.S.C. § 636(b)(1)(C); *Lothridge*, 324 F.3d at 600 (citing 28 U.S.C. § 636(b)(1)); *Thompson*, 897 F.2d at 357; *United States v. Conley*, No. 1:21-cr-00005-SRC, 2021 WL 6124555, at *1 (E.D. Mo. Dec. 28, 2021).

The Fourth Amendment protects "the people" from "unreasonable searches and seizures." U.S. Const. amend. IV.  But to have a constitutionally cognizable privacy interest, a party "must show that (1) he has a reasonable expectation of privacy in the areas searched or the items seized, and (2) society is prepared to accept the expectation of privacy as objectively reasonable." *United States v. Wheelock*, 772 F.3d 825, 828 (8th Cir. 2014) (cleaned up).  Individuals do not have reasonable expectations of privacy in "information revealed to a third party and conveyed by [the third party] to Government authorities."  *Id.*  In *Wheelock*, the Eighth Circuit held that individuals have no "reasonable expectation of privacy in . . . [their] IP address[es]."  *Id.* (cleaned up).

Then came the Supreme Court's decision in *Carpenter v. United States*, in which the Court held that "the unique nature of cell phone location information" warrants Fourth Amendment protection, even if "the Government [can] obtain[] the information from a third

9

party." 585 U.S. 296, 315 (2018). Smajlovic draws numerous comparisons between the cell phone location information at issue in *Carpenter* and IP logs, asserting that *Carpenter*'s rationale should extend to the IP logs as well. *See* doc. 88 at 13–16; *see also* doc. 92 at 3. But the *Carpenter* Court emphasized the "unique nature of cell phone location information," and accordingly clarified that its "decision . . . [was] a narrow one." *Carpenter*, 585 U.S. at 315–16. The Court even declared that, under its holding, "[t]he Government will be able to use subpoenas to acquire records in the overwhelming majority of investigations." *Id.* at 319.

And federal courts of appeals following *Carpenter* have unanimously agreed that individuals do not have a reasonable expectation of privacy in their IP addresses and logs. *See United States v. Contreras*, 905 F.3d 853, 857 (5th Cir. 2018); *Wellbeloved-Stone*, 777 F. App'x at 607; *United States v. Trader*, 981 F.3d 961, 968–69 (11th Cir. 2020) (finding that an individual had no reasonable expectation of privacy in a collection of his IP addresses); *United States v. Soybel*, 13 F.4th 584, 593–94 (7th Cir. 2021); *United States v. Rosenow*, 50 F.4th 715, 737–38 (9th Cir. 2022); *United States v. Hood*, 920 F.3d 87, 92 (1st Cir. 2019) (finding that an individual had no reasonable expectation of privacy in his IP logs). Accordingly, the Court finds that *Carpenter* did not abrogate the Eighth Circuit's holding in *Wheelock* regarding IP addresses.

In reply, Smajlovic tries to distinguish between summoning a single IP address, as was the case in *Wheelock*, 772 F.3d at 827–28, and summoning "more comprehensive IP logs." Doc. 92 at 2–3. He states that the latter are "timestamped spreadsheets recording all of the IP addresses [that] accessed a particular account or service during a given time period." *Id.* at 2. Therefore, "IP logs are more akin to" the cell phone location information at-issue in *Carpenter*, because the logs "give investigators the ability to chronicle a person's past movements." *Id.* (citing *Carpenter*, 585 U.S. at 309) (cleaned up). But Smajlovic cites no authority supporting his

10

claim that an individual's Fourth Amendment interest turns on the *number* of IP addresses sought by an agency (whether a single one, or enough to create a "log").  And applicable case law does not support such a distinction either.  *Compare Rosenow*, 50 F.4th at 738, *with Hood*, 920 F.3d at 92, *and Trader*, 981 F.3d at 968–69.  Therefore, the Court finds that Smajlovic had no reasonable expectation of privacy in his IP logs, and overrules his objection.  Doc. 88 at 13–16.

### B.        Whether HSI violated the Fifth Amendment

Smajlovic also takes issue with the R&R's not discussing Smajlovic's Fifth Amendment Due Process argument.  Doc. 88 at 16–17.  Smajlovic argued in his Motion to Suppress that HSI's "violation of § 1509 . . . implicates [his] Fifth Amendment right to due process."  Doc. 65 at 21.  He asserts that "[b]ad faith co-optation of civil process is antithetical to the concept of ordered liberty."  *Id.* at 22.  Therefore, "[t]his Court should . . . hold that HSI, as an institution, acted in bad faith by using 19 U.S.C. § 1509 to obtain Mr. Smajlovic's subscriber and IP activity. The Court should additionally hold that HSI violated the Due Process Clause by engaging in behavior which shocks the conscience."  *Id.* at 23.

Smajlovic cites *Abel v. United States*, 362 U.S. 217, 226 (1960) and *United States v. Genser*, 582 F.2d 292, 308 (3d Cir. 1978) for these propositions.  These cases offer little support, as explained in *Meyrand*.  *See* Report & Recommendation, *United States v. Meyrand*, No. 4:23-cr-00287-HEA-SPM, doc. 74 at 20–23 (E.D. Mo. Jan. 13, 2025).  Even if they did, Smajlovic provides no additional factual basis for why HSI's actions "shock the conscience" or evince bad faith based on these cases; instead, he merely reasserts that HSI illegally issued summonses under section 1509.  *See* doc. 65 at 21–23.  Because the Court finds that section 1509 authorized

11

HSI's summonses, *see supra* IV.A.1, the Court finds that Smajlovic fails to show that HSI engaged in bad-faith behavior that shocks the conscience in issuing those summonses.

### C.       The legality of HSI's search warrants

Judge Holmes also found that HSI validly obtained four search warrants on Smajlovic's accounts and premises. *See* doc. 82 at 12–15. Smajlovic objects; he first argues that HSI's search warrants were tainted because HSI's summonses—whose returns formed the probable-cause basis for these search warrants—violated section 1509. Doc. 88 at 16; *see also* doc. 65 at 23. Second, he maintains that the April 12, 2023 warrant relied on "information too stale to establish probable cause." Doc. 88 at 17–18; *see* doc. 65 at 25–27. And because the subsequent warrants relied on information seized from this warrant, he claims that "all four search warrants issued in this case relied upon stale information." Doc. 88 at 18. He argues that Judge Holmes should have therefore analyzed whether the subsequent warrants were founded on sufficient probable cause, only after excluding the information gathered by the first warrant. *See* doc. 88 at 17–18; *see also United States v. Swope*, 542 F.3d 609, 614 (8th Cir. 2008). When analyzed that way, Smajlovic "contends that . . . none of the warrants were supported by probable cause." Doc. 88 at 18 (emphasis removed).

Because the Court finds that HSI did not violate section 1509 in issuing its summonses, the Court agrees with Judge Holmes that HSI's "search warrants were not tainted." Doc. 82 at 12. But even if the warrants were tainted or relied on stale information, the Court would not suppress the fruits of HSI's search. Under the good-faith exception to suppression, "evidence seized pursuant to a search warrant . . . that is later determined to be invalid[] will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable." *United States v. Ross*, 487 F.3d 1120, 1122 (8th Cir. 2007) (citation omitted). The good-faith

exception would apply here even if Smajlovic were correct that "none of the warrants were supported by probable cause," doc. 88 at 18 (emphasis removed).  *See United States v. Mayweather*, 993 F.3d 1035, 1040–41 (8th Cir. 2021).  The good-faith exception does not apply in four instances:

> [I]f (1) the affiant [misled] the issuing judge with a knowing or reckless false statement; (2) the issuing judge wholly abandoned her judicial role; (3) the supporting affidavit was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable"; or (4) the warrant was "so facially deficient" that the executing officer could not reasonably presume its validity.

*United States v. Notman*, 831 F.3d 1084, 1089 (8th Cir. 2016) (citing *United States v. Leon*, 468 U.S. 897, 923 (1984)).  Smajlovic argues that the "good[-]faith exception does not apply," because (i) "the warrants in this case contained information so stale that it was objectively unreasonable for law enforcement officers to conclude that there was probable cause," and (ii) "after excising improperly[ ]obtained information from the [subsequent] warrants, [those] warrants are 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.'"  Doc. 92 at 3 (quoting *Leon*, 468 U.S. at 923).

But impermissible staleness alone does not undermine probable cause sufficient to overcome the good-faith exception.  *See United States v. McNeil*, 184 F.3d 770, 775 (8th Cir. 1999).  So even if the April 12, 2023 warrant relied on stale information, HSI officers could rely on it in good faith.  And even if this warrant was issued in violation of the Fourth Amendment, the good-faith exception similarly protects the officers' reliance on subsequent warrants based on the evidence gathered from the April 12, 2023 warrant.  *See United States v. Cannon*, 703 F.3d 407, 415 (8th Cir. 2013) ("[A]ssuming that the warrant was based on evidence collected in violation of [a party's] Fourth Amendment rights, the *Leon* good-faith exception bars application of the exclusionary rule to evidence seized pursuant to the warrant."); *United States v. Rodriguez*,

13

834 F.3d 937, 941 (8th Cir. 2016) (noting that the good-faith exception "applies even if the search warrant application cites information gathered in violation of the Fourth Amendment" (cleaned up)).  Because Smajlovic provides no other argument for the inapplicability of the good-faith exception, the Court will not suppress the evidence that HSI obtained pursuant to its four warrants.  The Court therefore overrules Smajlovic's objections.  Doc. 88 at 16, 17–18.

### D.    Smajlovic's objections to facts in the R&R

Smajlovic objects that the R&R "found facts [that] were not established as part of the evidentiary record."  Doc. 88 at 5.  Specifically, he objects to the portions of the R&R's findings of fact where Judge Holmes details Smajlovic's apprehension and interview by law enforcement.  Doc. 88 at 5–6; *see* doc. 82 at 4–5.  Smajlovic also objects to the R&R's inclusion of various items that it says HSI found when executing a search at Smajlovic's house on September 24, 2023.  Doc. 88 at 5–8.  The disposition of Smajlovic's motion does not turn on the details of Smajlovic's apprehension or on what HSI found at Smajlovic's house.  Accordingly, the Court does not adopt this fact from the R&R and overrules Smajlovic's objection as moot.  *Id.*

Smajlovic also objects to the R&R's "characterization of the Skype returns."  Doc. 88 at 18.  The R&R states that, in response to the April 12, 2023 warrant, "Microsoft provided records containing 58,000 lines of chat conversation between 'xflinkx' and 722 other usernames regarding the sexual exploitation of minors from April 20, 2017, to September 14, 2022."  Doc. 82 at 14.  Smajlovic objects, stating that "[t]he record . . . does not show that those chats were consistently, uniformly, or entirely about the sexual exploitation of minors."  Doc. 88 at 18.

Smajlovic reads too much into the R&R's use of the word "regarding."  The R&R does not claim that every single chat between "xflinkx" and other usernames was "consistently, uniformly, or entirely about the sexual exploitation of minors," just that the conversations

14

regarded such exploitation.  And the only evidence in the record on this point supports that the chats contained "numerous examples of the user of 'xflinkx' soliciting or negotiating for, and in many instances seemingly completing, online live video sex shows involving minor females." Docs. 76-1 at 33, 76-3 at 19, 76-4 at 22.  Nevertheless, the disposition of Smajlovic's motion does not turn on the characterization of Microsoft's returns from the April 12, 2023 warrant.  The Court therefore need not, and does not, adopt this fact from the R&R and overrules Smajlovic's objection as moot.  Doc. 88 at 18.

## V.      Conclusion

Accordingly, the Court (i) overrules Smajlovic's [88] objections; (ii) sustains, adopts, and incorporates Judge Holmes's [82] Report and Recommendation in part, as discussed; and (iii) denies Smajlovic's [65] Motion to Suppress Physical Evidence.

So ordered this 20th day of March 2026.

_____
STEPHEN R. CLARK
CHIEF UNITED STATES DISTRICT JUDGE